IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

ROY JOE KAISER, also known as Big Bro                                        PLAINTIFF

v.                        Civil No. 5:23-CV-05130-CDC

DEPUTY WEINERHOLD, Benton County Detention Center (BCDC);
DEPUTY LEE, BCDC; DEPUTY KELLY, BCDC; and
LIEUTENANT ROSS, BCDC                                                        DEFENDANTS

## MEMORANDUM OPINION

Plaintiff Roy Joe Kaiser, a prisoner, filed the above-captioned civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff proceeds *pro se* and *in forma pauperis*. *See* (ECF No. 3). The parties have consented to the jurisdiction of the undersigned magistrate judge, (ECF No. 5) and the matter is before the Court on Defendants' Motion for Partial Summary Judgment. (ECF No. 17). In support of the Motion, Defendants filed a memorandum, (ECF No. 13), and statement of undisputed facts, (ECF Nos. 14, 15), including five (5) exhibits. Plaintiff responded (ECF No. 23), but Defendants have not replied. The Motion is ready for decision, and for the reasons outlined below, Defendants' Motion for Summary Judgment is GRANTED, in part, DENIED, in part, and the matter DISMISSED WITHOUT PREJUDICE.

## BACKGROUND

The Court views Plaintiff's verified Complaint as asserting two claims for relief under 42 U.S.C. § 1983. First, Plaintiff says that from June 14, 2023, until July 31, 2023 (the day he signed the Complaint), Defendants Lee, Kelly, and Weinerhold harassed him because he had "spok[en] out against them" for disrespecting him. (ECF No. 1). Plaintiff identifies the following examples of alleged retaliation: (1) Plaintiff claims that on June 15, 2023, the Defendants falsified

1

a disciplinary charge against him; and (2) Plaintiff says that on June 21, 2023, Defendants Lee, Kelly and Weinerhold tried to provoke an attack, but when they were unsuccessful, Defendant Weinerhold pulled him out of his cell and put him on the ground, injuring his knee. *Id.* Plaintiff says that his knee swelled to the size of a baseball, and he could not walk or bend it, but Defendant Weinerhold denied him access to medical for two days. *Id.* Plaintiff also says that "Deputy Lee pulled his tazer and threatened to shoot [him] for no reason." (ECF No. 1, p. 5). Plaintiff identifies Defendants Lee, Kelly and Weinerhold in their personal and official capacities.

Second, Plaintiff claims that he filed "over 100 grievances" about the purportedly retaliatory conduct of Defendants Lee, Kelly and Weinerhold, but Defendant Ross failed to properly investigate and respond to those grievances. *Id.* Plaintiff contends Defendant Ross "blocked [him] from any other redress or due process." *Id.* Plaintiff also says Defendant Ross prevented him from filing appeals and meeting with other officers to file criminal charges. Plaintiff contends he told Defendant Ross about his mental health diagnoses and advised he was not taking his medication, but Defendant Ross used that information to "continue the abuse and gave [Plaintiff] 45 more days." *Id.*

Defendants have filed for summary judgment alleging that Plaintiff failed to first exhaust his administrative remedies pursuant to 42 U.S.C. § 1997e(a) before filing this federal action and arguing that Plaintiff's IFP status should be revoked pursuant to 28 U.S.C. § 1915(g). (ECF No. 17). According to Defendants, the BCDC grievance procedure in effect when Plaintiff's claims arose provides:

> Formal grievances are filed in writing and an inmate may ask for assistance from officers or other inmates in writing out the grievance on the kiosk. A problem that results from a specific event or action must be presented on the approved form within seven [7] days of the occurrence. Formal grievances will be accepted on

2

the kiosk or, in the event they are submitted on the paper form, they may be turned into any deputy to be forwarded to a lieutenant. On a daily basis, officers conduct rounds through the facility giving inmates the opportunity to request a paper grievance form or address concerns. The formal grievance must:

(1) Be in writing (via the kiosk),
(2) Clearly define the situation and the facts upon which it is based,
(3) Specify the wrongful act or situation and describe the harm done,
(4) Arise out of an act or failure to act by Benton County Detention Center,
(5) Address a matter within the control of the facility,
(6) Request a remedy that is within the power of the facility to grant,
(7) Be submitted within seven [7] days of the occurrence.
(8) Specify a requested remedy.

(ECF No. 15-2, p. 3). Defendants contend that this policy, as set forth in the BCDC Inmate Handbook, is available for inmates to read on the kiosk. (ECF No. 15). Defendants then say that Plaintiff did not follow this grievance procedure prior to initiating his lawsuit. Defendants say Plaintiff filed a grievance on June 19, 2023, alleging:

> lee skelly wideman anseveral ofgicers hav been trying to hrm me they pullef a tazer an threstene me to shoot me if i moved thy have been harassing an intimdating me for days thy threstened me with a tazer an put thrre hands on me illegally.

(ECF No. 15-4, p. 1). But Defendants argue this grievance does not comply with BCDC policy because it fails to "clearly define the situation and facts upon which it is based, does not describe the harm done, and does not specify a remedy." (ECF No. 15, p. 3).

Defendants point out that Plaintiff filed a grievance on June 24, 2023, alleging:

> on 6 14 23 while being booked in i was battered an assaulted by captain gage for simply talking in the lobby i was already injured in pain as seen by intake camera I told him this before his phiscical battery he said he didnt care when i tell u to shut up you shut the fuck up an do what i say . . he has ben using his deputys to harm n administrativly oppress me sense my firdt day

(ECF No. 15-4, p. 2). But Defendants assert this grievance similarly fails to comply with the BCDC grievance policy because Plaintiff submitted the grievance more than seven days after the incident giving rise to the grievance. (ECF No. 15).

3

Finally, Defendants say that BCDC policy provides that "[i]nmates have the option to appeal the findings of their disciplinary hearing, if they do not agree with the outcome." (ECF No. 15-2).  According to Defendants, a disciplinary hearing convened on June 20, 2023, to consider Plaintiff's conduct on June 18, 2023, but Plaintiff did not appeal the outcome of that hearing. (ECF No. 15).

In response, Plaintiff contends that he either exhausted his administrative remedies or was prevented from doing so by BCDC jail staff.   (ECF No. 23).

With respect to Plaintiff's *in forma pauperis* status, Defendants contend that three or more of Plaintiff's previous federal lawsuits were dismissed as "frivolous" or "malicious" – *Kaiser v. Smith, et al.*, Case No. 5:10-CV-5135-JLH (W.D. Ark. July 19, 2010); *Kaiser v. Lt. Carter, et al.*, Case No. 5:10-CV-5138-JLH (W.D. Ark. July 22, 2010); and *Kaiser v. North Bay Village Police*, Case No, 1:10-CV-22941-CMA (S.D. Fl. Aug. 16, 2010).   Thus, say Defendants, Plaintiff's IFP status should be revoked pursuant to 28 U.S.C. § 1915(g).

## LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party."  *Ward v. Olson*, 939 F. Supp. 2d 956, 961 (D. Minn. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  A fact is material only when its resolution would affect the outcome of a case.  *Anderson*, 477 U.S. at 248.

Further, the moving party bears the initial burden of identifying "those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Jackson v.*

4

*United Parcel Serv., Inc.*, 643 F.3d 1081, 1085 (8th Cir. 2001). In response, the nonmoving party "may not rest upon mere denials or allegations but must instead set forth specific facts sufficient to raise a genuine issue for trial." *Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691 (8th Cir. 2002). In considering a summary judgment motion, the court views all the evidence and inferences in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255.

## DISCUSSION

Defendants assert two bases for summary judgment: (1) Plaintiff, a prisoner, failed to first exhaust his administrative remedies in accordance with 42 U.S.C. § 1997e(a) before initiating this action; and (2) Plaintiff's IFP status should be revoked pursuant to 28 U.S.C. § 1915(g).

In support of their motion, Defendants attach the following exhibits: (1) Benton County Sheriff's Office Criminal Detention Intake Form for Plaintiff, dated June 14, 2023 (ECF No. 15-1); (2) the Benton County Detention Center Inmate Handbook (ECF No. 15-2); (3) the Benton County Sheriff's Office Policy Manual (ECF No. 15-3); (4) the Conversation Activity, History for Benton County, AR, ID: 58675, all posts from 6/14/2023 to 8/21/2023 (ECF No. 15-4); and (5) Benton County Sheriff's Office Disciplinary Actions Log (ECF No. 15-5). While none of these documents has been authenticated, Plaintiff has not objected to them on the grounds that they could not be presented in a form that would be admissible evidence at trial. *See* Fed. R. Civ. P. 56(c)(2); *see also Gannon Intern., Ltd. v. Blocker*, 684 F.3d 785, 793 (8th Cir. 2012) (in considering the admission of evidence at summary judgment, courts consider not whether the evidence "would be admissible at trial" but rather whether "it could be presented at trial in an admissible form").[1]

---

[1] In any event, the Court finds that these documents could be admissible under either the business record or public record exception to the general rule excluding hearsay as inadmissible. *See, e.g.*, Fed. R. Evid. 803(6), Fed. R. Evid. 803(8).

5

Indeed, despite instructing Plaintiff on how to respond to a motion for summary judgment, (ECF No. 16), Plaintiff's response to Defendants' Partial Motion for Summary Judgment is neither an affidavit nor sworn under penalty of perjury. (ECF No. 23). Thus, the Court considers Plaintiff's response as argument and looks to his verified Complaint to determine whether there are any material fact disputes that would preclude summary judgment. *See Ward v. Moore*, 414 F.3d 968, 970 (8th Cir. 2005) (concluding that plaintiff's second amended complaint is the equivalent to an affidavit and can serve as plaintiff's response to defendants' summary judgment motion because it was verified under penalty of perjury) (citing *Spear v. Dayton's*, 733 F.2d 554, 555-56 (8th Cir. 1984)).

Given this record, the Court turns to the merits of Defendants' Motion for Summary Judgment.

### A. Exhaustion

Section 1997e(a) of the Prison Litigation Reform Act (PLRA) "requires a prisoner to exhaust 'such administrative remedies as are available' before suing over prison conditions." *Booth v. Churner*, 532 U.S. 731, 733 (2001). This requirement is mandatory. *See Chelette v. Harris*, 299 F.3d 684, 687 (8th Cir. 2000). But "[i]f an inmate fails to exhaust one or more discrete claims raised in the § 1983 complaint, the PLRA requires only that the unexhausted claim or claims be dismissed – it does not require that the complaint be dismissed in its entirety." *Abdul-Muhammad v. Kempker*, 486 F.3d 444, 446 (8th Cir. 2007) (citing *Jones v. Bock*, 549 U.S. 199 (2007)).

In determining whether the plaintiff has first exhausted his administrative remedies, courts look to the prison's grievance procedure. *Id.* "[T]he degree of specificity required in a prison

6

grievance 'will vary from system to system and claim to claim, but it is the prison's requirements, and not that PLRA, that define the boundaries of proper exhaustion.'" *Id.* (quoting *Jones*, 549 U.S. at 218)). Thus, to satisfy Section 1997e(a)'s exhaustion requirement, inmates must file grievances in accordance with the institution's policies and procedures. *See Washington v. Uner*, 273 F. App'x 575, 577 (8th Cir. 2008) (citing *Woodford v. Ngo*, 548 U.S. 81, 91-92 (2006)).

As a preliminary matter, Section 1997e(a) clearly applies here: Plaintiff was incarcerated at the Benton County Detention Center ("BCDC") at the time he filed his Complaint and the factual predicate of his claims stem from his conditions of confinement at the BCDC. 42 U.S.C. § 1997e(a). For the reasons detailed below, the Court finds Plaintiff failed to exhaust those remedies with respect to his current claims.

1. **Claim 1**

In claim 1, Plaintiff asserts that Defendants Lee, Kelly and Weinerhold retaliated against him for "speaking out" against them. (ECF No. 1). Plaintiff says that on June 15, 2023, they lodged a false disciplinary charge against him; on June 21, 2023, they tried unsuccessfully to provoke an attack and that Defendant Weinerhold ultimately dragged him out of his cell and "put" him on the ground, injuring his knee; and that he was denied medical care for two days after this injury. *Id.* Plaintiff also says that Defendant Lee pulled a taser on him and threatened to shoot him. *Id.*

As noted above, the BCDC grievance policy requires that a grievance must:

(1) Be in writing (via the kiosk),
(2) Clearly define the situation and the facts upon which it is based,
(3) Specify the wrongful act or situation and describe the harm done,
(4) Arise out of an act or failure to act by Benton County Detention Center,
(5) Address a matter within the control of the facility,
(6) Request a remedy that is within the power of the facility to grant,
(7) Be submitted within seven [7] days of the occurrence.

7

  (8) Specify a requested remedy.

(ECF No. 15-2, p. 3).

  Plaintiff does not dispute that the grievance policy is outlined in the Benton County Detention Center Inmate Handbook ("Handbook") or that this Handbook is available for inmates to read on the kiosk. (ECF No. 15, p. 2); *see also* Fed. R. Civ. P. 56(3)(2) (if a party fails to properly address another party's assertion of fact, the court may consider the fact as "undisputed" for the purposes of the summary judgment motion).

  There is no dispute that Plaintiff submitted a grievance on June 19, 2023, saying:

> lee skelly wideman anseveral ofgicers hav been trying to hrm me they pullef a tazer an threstene me to shoot me if i moved thy have been harassing an intimdating me for days thy threstened me with a tazer an put thrre hands on me illegally.

(ECF No. 15-4, p. 1). However, as a threshold matter, the grievance does not specify when the events giving rise to the grievance occurred, so it is unclear whether it was filed within 7 days of that event (or series of events). That said, Plaintiff's June 19, 2023, grievance plainly does not satisfy the exhaustion requirement as to Claim 1 because Plaintiff does not describe in the grievance that Defendants Kelly, Lee, and Weinerhold filed a false disciplinary report against him or that they tried to provoke an attack or that Defendant Weinerhold injured his knee and then deprived him of medical care for two days.

  While the grievance does address Plaintiff's allegation that Defendant Lee threatened to shoot Plaintiff with a taser, this grievance does not satisfy the BCDC grievance policy because it does not "[r]equest a remedy that is within the power of the facility to grant" or "specify a requested remedy." *Id*. This grievance fails to request *any* remedy. Accordingly, Plaintiff's June 19, 2023, grievance fails to comply with BCDC grievance policy, and he failed to exhaust his administrative remedies with respect to Claim 1.

8

Defendants point out that none of Plaintiff's grievances could be viewed as relating to Claim 1. And while Plaintiff contends that he filed "over 100 grievances to Lt. Ross about the denial of rights and privileges, retaliation, falsified documents [targeted]and harassed by Deputy Weinerhold, an Kelly an Lee," (ECF No. 1, p. 6), Plaintiff did not respond to Defendants' Motion by claiming he filed *additional* grievances specifically regarding the conduct giving rise to Claim 1 that were omitted by Defendants. (ECF No. 23). There is no allegation in Plaintiff's Complaint that he grieved about Defendants Weinerhold, Kelly and Lee filing a false disciplinary charge against him, attempting to provoke him, putting him to the ground, injuring his knee, and/or depriving him of medical care for two days. (ECF No. 1). And Plaintiff has not alleged that any such unspecified grievance complied with the official BCDC grievance policy.[2] Absent such specificity, and even when viewed in the light most favorable to Plaintiff, a general assertion that Plaintiff filed grievances about the Defendants' conduct is wholly insufficient as it does nothing more "than simply show that there is some metaphysical doubt as to the material facts." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). Such a showing is not adequate to preclude entry of summary judgment. *Id.* (The nonmovant must come forward with "specific facts showing that there is a genuine issue for trial" to survive summary judgment) (quoting *Matsushita*, 475 U.S. at 586-87)).

To be sure, Section 1997e(a) only requires the exhaustion of administrative remedies "as

---

[2] Plaintiff asserts in the Complaint that Defendants Weinerhold, Kelly, and Lee retaliated against him after he filed a grievance about their behavior. (ECF No. 1, p. 5). Plaintiff's June 19, 2023, grievance may be the grievance that instigated the Defendants' alleged retaliation, but there is nothing in the summary judgment record that Plaintiff filed grievances about the retaliation itself. Accordingly, Plaintiff has plainly not exhausted his administrative remedies as to Claim 1.

available" before filing a federal suit. *See* 42 U.S.C. § 1997e(a). "As available," in turn, means that "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of." *Ross v. Blake*, 578 U.S. 632, 643 (2016) (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). The Supreme Court has recognized "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Finally, an administrative procedure is unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.

Plaintiff has argued that BCDC jail officials prevented him from pursuing his administrative remedies. (ECF No. 23). This argument suffers from a fatal defect on summary judgment: Plaintiff has entirely failed to assert any admissible evidence – in the form of a sworn statement or affidavit or otherwise – to support his allegation under *Ross*. And unfortunately for Plaintiff, the admissible evidence in the summary judgment record refutes his contention as Plaintiff asserts in his verified Complaint that he has filed "hundreds" of grievances (ECF No. 1, at p. 6), and even if the reference to "hundreds" is hyperbolic, Plaintiff has filed several of them while detained at the BCDC. (ECF No. 15-4). While Plaintiff's verified Complaint alleges Defendant Lee "blocked [him] from any other redress or due process an denied [him] full due process/exhaustion of [his] appeals," (ECF No. 1, at p. 6), these generalized allegations are not

accompanied by any specific facts setting forth, for example, when or how Defendant Lee prevented Plaintiff from exhausting his administrative remedies. Absent such facts, there is no material fact dispute about whether the BCDC's administrative remedies were "available" to Plaintiff within the meaning of 42 U.S.C. § 1997e(a). Defendants' Motion for Summary Judgment – for failure to first exhaust administrative remedies as required pursuant to 42 U.S.C. § 1997e(a) as to Claim 1 – will be granted.

   2. **Claim 2**

Plaintiff also claims that Defendant Ross failed to properly respond to his grievances about Defendants Weinerhold, Kelly and Lee. (ECF No. 1, at p. 6).

Defendants assert that Plaintiff filed the following grievance on June 24, 2023,

> on 6 14 23 while being booked in i was battered an assaulted by captain gage for simply talking in the lobby i was already injured in pain as seen by intake camera I told him this before his phiscical battery he said he didnt care when i tell u to shut up you shut the fuck up an do what i say . . he has ben using his deputys to harm n administrativly oppress me sense my firdt day

(ECF No. 15-4, p. 2). This grievance does not comport with BCDC grievance policy because policy requires an inmate to file a grievance within 7 days of the incident giving rise to the grievance, and Plaintiff did not submit this grievance until ten days following the incident. Further, and more to the point, this grievance does not pertain to Plaintiff's claim that Defendant Ross has failed to properly respond to grievances. Thus, this grievance fails to satisfy Plaintiff's obligation to first exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a) before initiating a federal lawsuit.

As discussed in connection with Claim 1, Plaintiff does not assert any admissible evidence to suggest that he filed *additional* grievances on Claim 2, and that Defendants did not include those

11

grievances in the summary judgment record. Instead, Plaintiff asserts that he was prevented from exhausting his administrative remedies. (ECF No. 1). For the same reasons discussed, this general accusation lacks the specificity necessary to preclude summary judgment. Thus, Defendants' Motion for Summary Judgment for failure to exhaust administrative remedies as to Claim 2 will be granted.

### 3. Disciplinary Proceedings

Defendants also construe Plaintiff's Complaint as challenging his disciplinary proceedings. (ECF No. 15, p. 3). Plaintiff's Complaint does not specifically allege the basis for the disciplinary proceedings against him, i.e., the factual predicate of the charge, when those proceedings took place, or their outcome. (ECF No. 1). But when reading his Complaint, Defendants appear to discern that Plaintiff is referencing a disciplinary proceeding from June 20, 2023. (ECF No. 15-5). According to the Benton County Sheriff's Office Disciplinary Action report, on June 20, 2023, Plaintiff received 5 days in lockdown – July 5-10, 2023 – after the hearing officer determined that Plaintiff argued with Defendant Wiederhold on June 18, 2023. *Id.* There is simply a "no" written in the section titled "inmate wishes to appeal." *Id.*

To the extent that Plaintiff is challenging his disciplinary proceedings, and to determine whether Plaintiff exhausted his administrative remedies with respect to this claim, the Court turns to BCDC policy. *See Washington,* 273 F. App'x at 577.

Defendants contend that Plaintiff failed to exhaust his remedies with respect to this claim because he did not appeal the outcome of his disciplinary proceedings. (ECF No. 15, p. 3). Indeed, the "Disciplinary Procedure Rights" section of the BCDC Inmate Handbook provides that "[i]nmates have the option to appeal the findings of their disciplinary hearing, if they do not agree

12

with the outcome." (ECF No. 15-2, p. 3) (emphasis added). The "no" notation in the "inmate wishes to appeal" section of the Benton County Sheriff's Office Disciplinary Action report indicates that Plaintiff did not exhaust his administrative remedies because he did not pursue an appeal of the outcome of those proceedings – an option that was available to him pursuant to the BCDC Inmate Handbook.

For his part, Plaintiff does not appear to dispute his lack of an appeal but instead argues that he was "blocked" or "denied" due process of his "appeals." (ECF No. 1, p. 6). Such broad statements, unsupported by any specific, particularized facts detailing when or how Plaintiff was prevented from pursuing his administrative remedies, are simply insufficient to create a genuine issue of material fact for trial. *See Anderson*, 477 U.S. at 256 (a party opposing summary judgment "must set forth specific facts showing that there is a genuine issue for trial). Accordingly, to the extent that Plaintiff challenges the June 20, 2023, disciplinary proceedings, Plaintiff has failed to exhaust his administrative remedies as provided in the BCDC Inmate Handbook.

**B. Three Strikes**

Defendants claim Plaintiff should be barred from pursuing this action as a pauper because he previously has filed civil actions as a prisoner and at least three of those actions were dismissed as frivolous or malicious or for failure to state a claim upon which relief may be granted. Defendants identify *Kaiser v. Smith, et al.*, Case No. 5:10-CV-5135-JLH (W.D. Ark. July 19, 2010); *Kaiser v. Lt. Carter, et al.*, Case No. 5:10-CV-5138-JLH (W.D. Ark. July 22, 2010); and *Kaiser v. North Bay Village Police*, Case No, 1:10-CV-22941-CMA (S.D. Fl. Aug. 16, 2010). (ECF No. 14, p. 1). Defendants contend that Plaintiff's IFP status should therefore be revoked,

and Plaintiff be required to pay the filing fee before proceeding with this action. (ECF No. 13).

Defendants misapprehend the law of summary judgment, and the limitations on prisoners proceeding IFP.

First, Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. And that Rule says, in pertinent part, "[a] party may move for summary judgment, *identifying each claim or defense—or the part of each claim or defense—*on which summary judgment is sought." Fed. R. Civ. P. 56(a) (emphasis added). Plaintiff's IFP status plainly does not relate to any of his claims, either in whole or in part. Defendants cite no law supporting that improper IFP status under Section 1915(g) is a defense to prisoner-plaintiff litigation. Indeed, the Defendants seem to concede they are seeking dismissal rather than status revocation. (ECF No. 13). A motion for summary judgment is an improper vehicle to request revocation of a litigant's pauper status.

Second, and perhaps more to the point, the Defendants are wrong in their analysis of 28 U.S.C. § 1915(g). Pursuant to that statute,

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding [and be granted IFP status] if the prisoner has, on three or more occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted . . . .

28 U.S.C. § 1915(g).

Defendants claim that the following three cases constitute "strikes" against Plaintiff, thereby precluding him from qualifying for IFP status in this case unless he is "under imminent danger of serious physical injury" 28 U.S.C. § 1915(g): *Kaiser v. Smith, et al.*, Case No. 5:10-CV-5135-JLH (W.D. Ark. July 19, 2010); *Kaiser v. Lt. Carter, et al.*, Case No. 5:10-CV-5138-

14

JLH (W.D. Ark. July 22, 2010); and *Kaiser v. North Bay Village Police*, Case No, 1:10-CV-22941-CMA (S. D. Fl. Aug. 16, 2010).

The Court takes each case in turn. In *Smith*, Plaintiff, who was incarcerated at the Grimes Unit of the Arkansas Division of Correction (ADC), failed to comply with the court's scheduling order. *Smith*, 5:10-CV-5135 (ECF No. 18). When court staff contacted Plaintiff to inquire about his noncompliance, he advised the court that he wanted to voluntarily dismiss the case. *Id.* Consistent with that request, Plaintiff's action was dismissed without prejudice. *Id.* (ECF No. 19). Nothing in the District Court's dismissal order suggests that the action itself was frivolous, malicious, or failed to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915A(b)(1). *Id.* This case is not a "strike."

The District Court entered an order dismissing *Lt. Carter* pursuant to Fed. R. Civ. P. 41(b) after Plaintiff failed to comply with the court's order. *Lt. Carter*, 5:10-CV-5138 (ECF No. 22). Again, nothing in the Court's order suggests that the action was frivolous, malicious, or failed to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915A(b)(1). *See id.*

Finally, in *North Bay Village Police*, the District Court entered an order dismissing the action without prejudice after Plaintiff failed to update the court with his current address. Case No. 1:10-CV-22941-CMA (ECF No. 15). Again, nothing in that order indicates the action itself was frivolous, malicious, or failed to state a claim as a matter of law. *Id.*

In all three of these cases, the order for dismissal followed Plaintiff's failure to prosecute the action and in the Eighth Circuit, such dismissals "may not fall within the ambit of section 1915(g)." *Anderson v. Langley*, 84 F. App'x 710 (8th Cir. 2003) (per curiam). A dismissal for failure to prosecute does not constitute a "strike" under the clear language of Section 1915(g). *See*

15

*Williams v. Harmon*, 294 F. App'x 243, 245 (8th Cir. 2008) (declining to consider a dismissal for failure to comply with Fed. R. Civ. P. 8 as a "strike" under 28 U.S.C. § 1915(g) because it does not fall within the clear language of that statute).

This Court thus finds no basis in law or fact to conclude that the cases identified by the Defendants – *Kaiser v. Smith, et al.*, Case No. 5:10-CV-5135-JLH (W.D. Ark. July 19, 2010); *Kaiser v. Lt. Carter, et al.*, Case No. 5:10-CV-5138-JLH (W.D. Ark. July 22, 2010); and *Kaiser v. North Bay Village Police*, Case No, 1:10-CV-22941-CMA (S. D. Fl. Aug. 16, 2010) – should constitute as "strikes" against Plaintiff within the meaning of 28 U.S.C. § 1915(g).  Accordingly, Defendants' Motion for Summary Judgment on the grounds that Plaintiff's IFP status should be revoked pursuant to 28 U.S.C. § 1915(g) is denied.

As noted above, Defendant's Motion for Summary Judgment on the grounds that Plaintiff failed to first exhaust his administrative remedies with respect to his claims is granted.  Because failure to exhaust is an affirmative defense to a prisoner-initiated action, such as this, *see* 42 U.S.C. § 1997e(a), and Defendants have established this affirmative defense as a matter of law, Plaintiff's action will be dismissed without prejudice.  *See Castano v. Neb. Dep't of Corr.*, 201 F.3d 1023, 1025 (8th Cir. 2000) (a dismissal pursuant to 42 U.S.C. § 1997e(a) is without prejudice).

## CONCLUSION

In sum and for all the reasons outlined above, Defendant's Motion for Summary Judgment, (ECF No. 17), is **GRANTED**, in part, and **DENIED**, in part.  Nevertheless, because this Court agrees that Plaintiff failed to first exhaust his administrative remedies as a matter of law, this matter is **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1997e(a).

**A concurrent JUDGMENT will be entered.**

DATED this 22nd day of February 2024.

>*/s/ Christy Comstock*
>CHRISTY COMSTOCK
>UNITED STATES MAGISTRATE JUDGE